*BEEN denied Access to Copy8 by D.U.I. Prison STAFF PLEASE RETURN Filed Copy Thank you Clerk*

# FILED

AUG 11 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

*540*

### MOTION, PURSUANT TO SECTION 2255 OF TITLE 28 UNITED STATES CODE

### ATTACKING A SENTENCE IMPOSED BY THAT COURT

*MHP*

UNITED STATES OF AMERICA
*Plaintiff*
VS.

**CV 08   3835**

_Anthony R. Turner, G-21511_
*Defendant*
(name of movant)
(Full name under which you
were convicted)

**E-filing**

CASE NO.
(To be supplied by the
Clerk of the District Court)
Superior Ct. Case No. CR006-8004/CR06-6918

**(PR)**

*08-3835 MHP*

---

## INSTRUCTIONS-READ CAREFULLY

In order for this motion to receive consideration by the District Court, it shall be in writing (legibly handwritten or typewritten) by the Movant, under penalty of perjury, and it shall set forth in concise form the answers to each applicable question. If necessary, Movant may finish his answer to a particular question on the reverse side of the page or on an additional blank page. Movant shall make it clear to which question any such continued answer refers.

Since every motion under Section 2255 of Title 28, United States Code, must be made under penalty of perjury, any false statement of a material fact therein may serve as the basis of prosecutions and conviction for perjury. Movant should therefore exercise care to assure that all answers are true and correct.

If the motion is made in forma pauperis, it shall include an affidavit (page 6 of this form) setting forth information which establishes that the Movant will be unable to pay the fees and costs of the 2255 proceedings. When the form is completed, the original and 2 copies shall be mailed to

*24*

the Clerk of the District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102

1. Place of detention **De ue L** *Vocation Institution, P.0, Box 600, Tracy, CA, 95378-0600*

2. Name and location of Court which, and name of judge who, imposed sentence *Superior Court of Calif. County of Yolo, 725 Court Street, Dept 5, Woodland, Calif, 95695*

3. The indictment number or numbers (if known) upon which the offense or offenses for which sentence was imposed.:

(a) *Alleged Possession of Drug Paraphenalia §§ 11377(a), 4140(b) P.C.*
(b) _____
(c) _____

4. The date upon which sentence was imposed and the terms of the sentence:

(a) *(July 24/2008) - Sentence to (2yrs, 8mos.) with (2yrs, 4-mos) time Served-Already done.*
(b) _____
(c) _____

5. Check whether a finding of guilty was made:

(a) after a plea of guilty _____
(b) after a plea of not guilty _____
(c) After a plea of nolo contenders *(C)* ✓ _____

6. If you were found guilty after a plea of not guilty, check whether that finding was made by

(a) a jury _____
(b) a judge without a jury *(b)* ✓ _____

7. Did you appeal from the judgment of conviction or the imposition of sentence? *Yes*

8. If you answered "yes" to question 7, list

(a) the name of each court to which you appealed:

I *Superior Court of Calif, County of Yolo Dept 5, e 111, Woodland, CA.*
11 *Court of Appeal in 3ad appellate Dist. Sacramento, 900 N Street,*
111 _____

(b) the result of each such court to which you appealed:

I    Denied

11   Denied

111

(b) the date of each such result:

I

11

111

(c) If known, citations of any written opinions or orders entered pursuant to such results:

I    None Cited

11   None Cited

111

**9.** State concisely the grounds on which you base your allegation that the sentence which was imposed on you is invalid.

(a) "Denied Due Process" And "Equal Protection" of Law in my Unlawful Arrest without Probable Cause, nor Suspicion Violated my 4th, 5th, 6th, 8th And 14th Amend. Rights

(b) Denied Due Process of Law And Equal Protection in Denial of Right to Speedy Trial by Arrest Delay And was illegally Restrained in Sheriff's Custody of Yolo County, for 17-days without Arraignment beyond 48-hr. Statute Requirements, Violated my 5th And 14th Amend. Rights.

(c) Denied Complete Due Process of Law to fair, Impartial Trial by Way of Cumulative Prejudice of (6) Six ineffective Court Appointed Counsel (S) to my case, As well As (5)-different Prosecutors Violated my 5th, 6th, 13th And 14th Amend. Rights. And Cal. Const. Art. I, §15, 17

10. State concisely and in the same order the facts which support each of the grounds set out in (9):

(a) On (2/11/06) Defendant was deprived Federal Due Process & Equal Protect-ion Rights During Arrest, without a Warrant, nor Probable Cause nor Reasonable Suspicion in Violation of U.S. Const. Amends 4th, 5th, 6th, 13th and 14th.

(b) On (2/11/06) Defendant was deprived Federal Protected Due Process And Equal Protection Rights to a fair And Impartial Trial, by Way of Ineffective Ass-istance of Counsel(S) - Six were Appointed And by Malicious Prosecution (S) Different Pros-ecutor(S) Appointed to my case And Violated my Rights of U.S. Const. Amends. 5th, 6th And 14th

(c) On (12/11/06) Defendant was deprived Federal Protected Due Process of Law And Equal Protection Rights by Way of Pre-Arrest Delay

3

- 3 -

*As well as Arraignment Delay and Failure to bring Defendant before a magistrate for (17-days) of illegal Restraint / Detention beyond (48-hr) Requirement State and Federal Law Statutes. Violated my Rights of U.S. Const. Amends. 5th, 6th and 13th, and 14th.*

11. Have you previously filed petitions for habeas corpus motions under section 2255 of Title 28, United States Code, or any other applications, petitions or motions with respect to this conviction? **"NO"**

12. If you answered "yes" to (11), list with respect to each petition, motion or application

    (a) the specific nature thereof:

   I     *Notice of Appeal and Writ of Habeas Corpus*
   11
   111

    (b) the name and location of the court in which each was filed:

   I     *Yolo County Superior Court (# 725 Court St (Rm 111), Woodland, CA. 95695*
   11 *Sacramento County 3rd   Appeal Court of Appeal, 900 N "St, Sacra, Ca. 95814*
   111

    (c) the disposition thereof:

   I     *denied*
   11    *denied*
   111

    (d) the date of each disposition

   I     *7 / /07*
   11    *7/ /07*
   111

    (e) if known, citations of any written opinions or orders entered pursuant to each such disposition:

   I     *NONE*
   11    *NONE*
   111

13. Has any ground set forth in (9) been previously presented to this or any other federal court by way of petition for habeas corpus, motion under section 2255 of Title 28, United States Code, or any other petition, motion or application? *NONE, I only have 81983 Actions Pending "NO" Petitions Nor Writs*

14. If you answered "yes" to (13), identify

    (a) which grounds have been previously presented:

4

I _____ SAME Grounds in this Petition _____
II _____ SAME Grounds in this Petition _____
III _____

(b) the proceedings in which each ground was raised:

I _____ Direct Appeal _____ / Superior Court
II _____ 3rd Appellate Review / 3rd Appellate Court
III _____

15. Were you represented by an attorney at any time during the course of    (Yolo County Public Defenders)

   (a) your arraignment and plea?    (2) Ineffective Counsels) J. Klopestien & Amber Bellmote

   (b) your trial, if any?    (4) Ineffective Counsels) J. Spangler, Jeff Raven, J. Toney, R. Beede

   (c) your sentencing?    SAME (6) - ineffective Attorneys

   (d) your appeal, if any, from the judgment of conviction of the imposition of sentence?
   No Counsels Refused to file appeal Not acting my inter-est. I filed appeal (In proper)

   (e) preparation, presentation or consideration of any petitions, motions or applications
   with respect to this conviction, which you filed? (In pro per) (No Attorney Assistance)

16  If you answered "yes" to one or more parts of (15), list

   (a) the name and address of each attorney who represented you:

   I _____ J. Klopestien & Amber Bellmote, 814 North St., Woodland, Ca. 95695
   II _____ J. Spangler, Jeff Raven, J. Toney 430 Lincoln Ave., Woodland, Calif. 95695
   III _____ Rodney Beede _____

   WHEREFORE, movant prays that the Court grant movant relief to which he may be

entitled in this proceeding.

Signed under penalty of perjury _Ant Hionry R. Turner_ at _Tracy, Ca. 95378060_

_8/3/08_
Date

_Anthony R. Turner_
Signature of Movant

5

~ 5 ~

Contin. Pg. 3 (Paragraph, 10)

Petitioner/Defendant (Anthony L. Turner) Complaining
of Respondent/Plaintiffs (U.S.A.). Alleges as follows;

(1).—  This is an Action brought by (Petitioner/Defendant)
against the (Respondent/Plaintiff) who in their indiv-
-idual and Representative Capacities, illegally Caused (him)
to be imprisoned at the (D.V.I. Prison Deuel Vocation
Institution Correctional Facility for a Period of (893-
-days) time served beyond the maximum Expiration
Date of 80% of (2yrs. 8months) imposed of (his)
(32-Month) Sentence, Completed (3½) months over
required time to be served.

(2).—  The (Petitioner/Defendant) in this Action is seek-
-ing Declaratory Relief and Damages for violation
of (his) Federally Protected Rights, Privileges and imm-
-unities Secured under the 8th, 4th, 5th, 13 And 14th
Amends. to the United State Constitutions and by
tit. 28 U.S.C. §§ 2255, 2241, 1331, 1343(3),(4), 2201-2202

(3).—  The Jurisdiction of this Court Arises under
28 U.S.C. §§ 2255, 2241, 1331, 1343(3),(4), 2201-2202.

(4).—  The (Petitioner/Defendant) is a citizen of the United
States born in Woodland, Ca. 95695 And resides in the
County of Yolo) And (State of California) From (Dec. 11-
-2006) through (Aug. 3, 2008) those time being relev-
-ant to the Causes of Action pleaded therein, (Petition-
-er/Defendant) resided at the Monroe Detention
Center Jail in the Sheriff's Dept. of Yolo County at
2420 East Gibson Rd., Woodland, Ca. 95776, Located

- 8-

in the (County of Yolo) within the Territorial
Jurisdiction of this Court.

(5).-    The (Respondent / Plaintiff) Yolo County Super-
ior Court and Yolo County Sheriff's Dept. et al.
are Employed by (U.S. Government) in (Calif. to do
Business in the (City of Woodland) as Municiple
Corporations Under Color and Pretense of auth-
ority of Law for the (State of California).

(6).-    The (Respondent / Plaintiffs) (Warnier) (S. Basha)
(A. Johnson) is Employed by the (County of Yolo) as
Municiple and Superior Court Judges, for the (State
of Calif.) are relevant at all times, acted in their
Lawful Capacities.

(7).-    The (Respondent / Plaintiffs) Jeff Resig and
his Deputy D.A.'s Eichele, R. Trudgeu, Wallace,
et.al. acted in their Individual and Official
Capacities to (Maliciously / Vindictively) Prosecute
Petitioner / Defendant), are Employees for the Yolo
County D.A.'s Office, for the (State of Calif.) are
relevant at all times, acted in their Lawful
Capacities.

(8).-    The (Respondent / Plaintiff) Ed G. Prieto, et.al.
is Employed as the Yolo County Sheriff of the
Yolo County Sheriff's Dept., and (He) and (His) sub-
ordinates are responsible for (Petitioner / Defend-
ant's) illegal Detrainment / and Arrest delay
for (17-days) in Custody without being Arraign-
ed From (12/11/06) through till (12/28/06), and
additional injuries, Larceny of Cash, Jewelry
and Personal Property without "Due Process", while

-9-

in (Bailment / Conversion) of Yolo County Sheriff
Dept. And at all times is relevant to these
Proceedings and Cause of illegal Restraint.

(9) - The (Respondent / Plaintiff) Lucas D. Spence #870
on (12/11/06) was the Police Officer who unlawfully
Arrested (Petitioner / Defendant) by unlawful
means without Probable Cause nor Suspicion nor
of Legal Cause for (his) Arrest. (Lucas D. Spence)
was a Employee of the (Yolo County) (Woodland
City Police Dep't) for the (State of Calif.). Did Wilfully
Knowingly Commit Perjury on the Police Report
And under oath of the Court that gave rise to
the False Arrest and Indictment of (Petitioner
- Defendant) one Misdemeanor Charges. §§ 11377(A),
4140 (6) P.C.

(10) - The Police officer (Lucas D. Spence Bdg. #870)
On (July, 13, 2007) was fired from the Woodland
Calif. Police Dep't. had an Internal Affairs
investigation of (his) misconduct involving
(Petitioner / Defendants) unlawful Imprisonment
Arrest and Detainment on (12/11/06) which was
Based on (his) False Probable Cause Report used
to Arrest and Detain (Petitioner / Defendant).

(11) - Officer (Lucas D. Spence) had a long History
of Unbecoming Conduct one and against Yolo
County Citizen's with Complaints Filed against
(him), but was Rehired by Yolo County Sheriff's
Dep't. (6-months) After being Fired from
Woodland City Police Dep't. in Yolo County, At
All times Herein (He) is relevant to this

initial (Cause of Action) who took $1,250.00 Dollars worth of Cash Jewelery and Personal Property off (Petitioner/Defendant's) Person and Kept it, and did not transport it to the Yolo County Sheriff's Dep't Jail where (Petitioner/Defendant) was Detained, Said Valued Cash Property and Jewelery was never returned.

(12).— On (July, 24, 2008) (Petitioner/Defendant) was forced to Plead Due to Ineffective Counsel(s) of Six Appointed and was legally incarcerated At (D.V.I.) Devel Vocation Institution Prison Facility by "Special", transport, issued by the (Superior Court of Yolo County Dept. #5) of the (State of California), following (his) unlawful Convictions. (July, 24, 2008)

(13).— The legally imposed Sentence of the (Petitioner/Defendant) At 80% of (2yrs. 8-mos.) expired (June, 11, 2008).

(14).— - As a result of the Intentional Conduct, the Reckless Conduct or grossly Negligent Conduct of the Defendants herein, the (Petitioner/Defendant) was detained at a Over-Crowed (D.V.I.) Facility Devel Vocation Institution Prison, under Inchumane Conditions of (1500-inmates beyond it 3,500 Housing Capacity, of inmates, which (he) has been denied Fed. Due Process" Rights to Classification for Parole Release, beyond (his) Maximum Ex-pired Parole Date (June, 11, 2008) Which,

(he) has served (30-months) of the (32-mos.) imposed by the Court at 80%, which has exceeded his Parole date by Al--most (3-mos.)

(15).- (Petitioner / Defendant) is Currently being Held at (D.V.I.) Prison Devel Vocation Institut-ions (illegally And Unlawfully) (3-months) beyond (his) Required Parole Date, in violation of (his) Federal Protected Constitutional Rights to "Liberty" until date of immediate Release, (90-days) After the Maximum 80% Expirat-ion Date of his (2yr. 8-month Sentence). He has served 2yr. 6-months of that Sentence 893-days. till this Day.

(16).- Immediately upon receiving this Information (Petitioner / Defendant) Prior to the Maximum Expiration date of (his) Sentence on (June, 11, 2008) of recieving information, the (Petitioner / Defendant) sent written "notices" to the (D.V.I.) (Warden-Steve Moore) (C.C.II - S. White), (P.A.- B. Leuth) Employee official (s) in "Charge" at Devel Vocation Institution Prison, Protesting illegal Restraint And "ERROR" Exceeding my Parole date by (3-months) on 80% ½ Time Served.

(17).- Where (Petitioner / Defendant) Maximum Expirat-ion Date passed without (his) being Released from (D.V.I) Prison Devel Vocation Institution, (He) Sought A Judgment Releasing (him) from Custody purs.

to this §2255 Petition for relief.

(18). — Upon Information and belief, the failure of Communications which Led to improper Computation of the (Petitioner/Defendant's) Sentence is Institutional in nature and Matter of Policy, Cal. Pen. C. §§ 2931.-2934. Cal. Pen. Codes-§§ - 2900. 5(e), 4019(a)(1),(b),(C), as there exist "no" System by which Jail time Served Computation of a Local Sentence is Communicated to State authorities.

(19). — the (Respondent/Plaintiff's) named as Representatives and officials of Yolo County are responsible for implementing Cal. Pen. Code(s) §§§§ 2931.-2934, 2900. 5 and 4019(a)(1),(b)(C). in a Manner Consistent with the requirements of all relevant Statutes and the United States Constitution.

(20). — The failure of named (Respondent/Plaintiff's) to impliment the Law, has Violated the (Petitioner/Defendant's) Fed. Protected Rights under the Statutes of the State of California and under the United States Constitution.

(21). — The (Respondent/Plaintiff) were under an Affirmative Legal Duty to properly Compute (Petitioner/Defendant's) Maximum expiration Date and Release (him) thereon.

(22). — The (Respondent/Plaintiff's) named, upon information and belief, their failure to release (Petitioner/Defendant's) was occaisioned by their total disregard, whether intentional, Reckless or grossly negligent in nature, of (his) Claims that (his) Maximum expiration Date was (June 11, 2008) and is still

illegally Confined (8/3/08).

(23). As a result of the foregoing the (Petitioner/ -Defendant) was deprived of (his) right to be free of excessive Punishment under the 8th Amend. of the United States Constitution and the Substantive and Procedural "Due Process" guaranteed under the 5th and 14th Amends. of the U.S. Const.

(24). Wherefore, the (Petitioner/Defendant) demands Judgment of Declaratory Relief and Damages $5,000.00 Dollars and a $120.00 Dollars for each Day that I continue to be Confined beyond my Statutory Required Release date (June, 11, 2008), in addition to the Costs and disbursements of this Action, along with Reasonable attorneys Fees. for prosecution thereof.

Date: (Aug. 3, 2008)

Anthony R. Turner
Anthony R. Turner
In Pro Per



Exhibit.

# A

# CRIME SUMMARY INFORMATION
# PROBABLE CAUSE DECLARATION

| BOOKING NUMBER: | CASE NUMBER:<br>WDP06-008004 |
|---|---|
| ARRESTEE (LAST, FIRST, MIDDLE):<br>TURNER, ANTHONY RICHARDO | DATE OF BIRTH:<br>5/13/1962 |
| ADDRESS:<br>449 WEST ST | |
| BOOKING CHARGES:<br>11377 (A) H&S/4140 B&P | SUPPLEMENTAL HOLDS: |
| DATE/TIME OF ARREST:<br>12/11/2006 00:00 | 48 HOUR EXPIRATION DATE/TIME:<br>12/13/2006 00:00 |
| ARRESTING AGENCY:<br>WOODLAND PD | ARRESTING OFFICER(S):<br>L.SPENCE, #870 |

## FACTS ESTABLISHING PROBABLE CAUSE FOR ARREST

On 12-11-2006 I contacted turner in the parking lot of the Dunton Motel in Woodland. Turner told me he was on parole out of Yolo County. I completed a parole search of Turner. I located a hypodermic syringe with a small amount of a clear substance in it in turner's left pant's pocket. Ofc. Flores transported the syringe to the Woodland Police Department where he tested the substance inside the syringe with a DOJ test kit. The substance inside the syringe tested positive for the presence of methamphetamine. Prior to testing the substance, Ofc. Flores observed the clear substance inside the syringe was at the 8cc. line on the syringe. I transported Turner to the Yolo Parole office where agent Modesto filled out a 3056 PC form. I transported Turner to the Yolo County Jail where he was booked on one count of 11377(a) H&S, 3056 PC hold and one count of 4140 B&P.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Executed on **Monday, December 11, 2006** in Yolo County, California.

By: **L.SPENCE**  Agency: **Woodland PD**  Badge Number: **870**

Signature: _____

I read the above facts establishing probable cause to Judge _____ on _____ at
_____ ☐ A.M. ☐ P.M. and the Judge determined that there ☐ is / ☐ is not probable cause to believe this
arrestee has committed a crime.

I declare under penalty of perjury that the foregoing is true and correct.

By: _____  Badge Number: _____  Date: _____  Time: _____

Signature of Deputy Sheriff: _____

*Public Defender*
*JFX*

# SUPERIOR COURT

Of the State of California for the
County of Yolo

Court Services
Appellate Division

725 Court Street, Room 103
Woodland CA 95695
(530) 406-6709

March 28, 2007

Anthony R. Turner #0610061
2420 E. Gibson Rd, AZ-111 Adseq
Woodland, CA 95776

Re: Notice of Appeal

Dear Mr. Turner:

I am returning your Notice of Appeal – Misdemeanor as we have no record of a
case #CR 06-8004. Nor do I find a judgment date of 2-26-07 for you. A copy of
your notice and this letter is also being sent to the Public Defender's office.

Thank you,

Pattie Nix
Appeals Clerk

RECEIVED

AUG 07 2007

OFFICE OF THE CLERK
SUPREME COURT, U.S.

1  Klopfenstein.

2         MR. KLOPFENSTEIN:   Okay.

3         THE COURT:  You may proceed, Mr. Klopfenstein.

4         MR. KLOPFENSTEIN:   Thank you, Your Honor.

5                    CROSS-EXAMINATION

6  BY MR. KLOPFENSTEIN:

7  Q     Officer, you testified that you were a cover unit

8  for two other officers that were at the Dunton Motel,

9  would that be true?

10  A     Three officers.

11  Q     Three officers that were at the Dunton motel?

12  A     Yes, I was.

13  Q     And that particular call where those three other

14  officers were investigating some sort of incident did not

15  relate to Mr. Turner; isn't that true?

16  A     Yes.

17  Q     In fact, you saw Mr. Turner with another person

18  standing down the street next to a car; isn't that right?

19  A     No.

20  Q     Where did you see Mr. Turner first time?

21         MR. EICHELE:   I would object as relevant.

22         THE COURT:  I'm going to overrule.

23         THE WITNESS:  Standing in the same parking lot.

24  BY MR. KLOPFENSTEIN:

25  Q     The police report that you prepared in this matter

26  indicates that Officer Flores and Officer Lara were

27  contacting quote, several subjects, correct?

28  A     Yes.

1  Q      Those contacts with Mr. Turner, was one of those

2  subjects that was being contacted?

3  A      No, he was not.

4  Q      So he was in the parking lot of the Dunton Motel

5  when you first saw him; is that correct?

6  A      Yes, he was.

7  Q      And where was he specifically?

8  A      On the east side of the parking lot.

9  Q      What was he doing?

10  A      Standing in front of a vehicle with Hispanic male

11  with the hood open.

12  Q      Okay.  At that point was he doing anything illegal?

13  A      No, he was not.

14  Q      Did you suspect him of being involved in any sort

15  of criminal activity at that point?

16  A      No, I did not.

17  Q      Did you know that he was on parole?

18  A      No, I did not.

19  Q      Had you ever had any contacts with Mr. Turner in

20  the past, any arrests that you were aware of?

21  A      No, I had not.

22  Q      This incident where Officer Flores and Officer Lara

23  were conducting this investigation had it ended when you

24  made contact with Mr. Turner?

25  A      You would have to ask them.

26  Q      Well, what was your understanding?

27  A      They were talking to several subjects and Officer

28  Demarest was standing by also.

```
 1    Q       Did any of these officers, Officer Flores or any of
 2    the other officers point to Mr. Turner and ask you to go
 3    and make contact with him in any sort of investigative
 4    capacity?
 5    A       No.
 6    Q       So you saw Mr. Turner with a Hispanic person with
 7    the hood of a vehicle up; is that true?
 8    A       Yes.
 9    Q       Were they working on that trying to fix the engine
10    or what were they doing, if you know?
11    A       It appeared they were.
12    Q       So it didn't appear to you that they were trying to
13    break in to this vehicle?
14    A       There was no criminal activity.
15    Q       At all?
16    A       No.
17    Q       So you just went over to ask him a question?
18    A       I did.
19    Q       And what -- why did you feel they were in some sort
20    of distress or some sort of problems, some sort of -- why
21    did you go over and make contact with Mr. Turner?
22    A       I wanted to contact them to see who they were, that
23    was it.
24    Q       What were they doing that made you believe you
25    needed to contact them as a police officer?
26    A       I didn't feel I needed to.
27            THE COURT:  I'm sorry, what was that -- what was
28    the last?
```

1    THE WITNESS:  I didn't feel that I needed to

2  contact them.

3  BY MR. KLOPFENSTEIN:

4  Q    You didn't have any purpose to contact them?

5  A    I just did a consensual contact.

6  Q    Well, you testified that when you made contact that

7  was when you -- Mr. Turner stepped back and he said, why

8  are you talking to me?

9  A    He -- I asked him a question, I believe I asked the

10  Hispanic male subject first where -- what room they were

11  staying in, at which point he replied, No. 10.

12    Mr. Turner, I asked him where he was staying, held

13  his arms at his side in very angry manner, demanded why.

14  Q    Okay.  So if I understand you correctly you didn't

15  suspect either one of these people to be involved in any

16  criminal activity, correct?

17  A    No.

18  Q    You just went up there because you felt that as a

19  police officer you could make contact with any person no

20  matter what they're doing day or night, would that be

21  true?

22  A    No.

23  Q    Okay.  Well, why didn't you explain what exactly --

24  why you went and made contact with somebody that wasn't

25  doing anything criminal?

26  A    Because of -- I have the right to.

27    MR. EICHELE:  Objection, argumentative question, it

28  assumes legal conclusion.

1       THE COURT:  I'm going to overrule it.  You may

2  answer the question.

3       THE WITNESS:   Can you repeat your question?

4  BY MR. KLOPFENSTEIN:

5  Q      Why did you make contact with Mr. Turner when you

6  didn't suspect him to be doing anything criminal?

7  A      Because they were in a public place within the city

8  of Woodland and I have the right to make a consensual

9  contact with anyone that is in a public place in the

10  performance of my duties.

11  Q      So you made contact with Mr. Tur -- with the

12  Hispanic gentleman first and asked him where he was

13  staying and what -- referring to the Dunton Motel?

14  A      I asked him where he was staying.

15  Q      He said he was staying in Room No. 10?

16  A      Yes, he did.

17  Q      Did you ever verify if, in fact, he was telling the

18  truth, this Hispanic male?

19  A      Yes.

20  Q      Was he staying in Room No. 10?

21  A      Yes.

22  Q      Okay.  Did he have a lease or some sort of rental

23  agreement where he could stay in Room No. 10?

24  A      I did not investigate that.

25  Q      Okay.  And then you asked Mr. Turner where he was

26  staying and that's when he said, why are you making

27  contact with me?

28  A      No, he did not ask me why I was making contact.

1  Q      What did he say specifically?

2  A      His specific remarks, exactly not all, but why do I

3  want to know where he was staying.

4  Q      Okay.  And you testified that he stepped back when

5  he did that and put his arms down by his side?

6  A      Put his arms out.

7  Q      Put his arms out?

8  A      From his sides.

9  Q      Okay.  Did he strike --

10  A      No, he did not.

11  Q      -- you?

12         Today you are in a full uniform, is this a uniform

13  that you normally wear on patrol?

14  A      It is.

15  Q      And it identifies -- it has badges on each side,

16  says Woodland Police Department?

17  A      It does.

18  Q      You have a silver badge that says Woodland Police

19  Department?

20  A      I do.

21  Q      I see you have a walkie-talkie right on your --

22  right around your heart that you can use at any sort of

23  immediate problems, correct?

24  A      I have hand-held radio.

25  Q      Hand-held radio.  You have a hand issued -- some

26  sort of revolver issued to you that you can use?

27  A      I have a handgun.

28  Q      Handgun.  Were there other officers in the area at

1    the time?

2    A    There was.

3    Q    Three other officers?

4    A    There was.

5    Q    All in uniform?

6    A    There were.

7    Q    And is this when you asked him if he was on

8    probation or parole is this -- this is the question you --

9    after he said, why are you making contact with me?

10    A    It is.

11    Q    You asked him, are you on probation or parole?

12    A    I did.

13    Q    Why did you -- did you suspect him to be involved

14    in any sort of criminal activity at this point?

15        MR. EICHELE:    Your Honor, I object at this point

16    he appears to be badgering the witness.  He asks -- asked

17    this question four times slightly different.  Officer has

18    answered it each time.

19        THE COURT:    I'm going to overrule, allow this one

20    question.

21        Go ahead, Mr. Klopfenstein.

22    BY MR. KLOPFENSTEIN:

23    Q    Did you suspect him to be involved in any criminal

24    activity when you asked him if he was on parole or

25    probation?

26    A    No, I did not.

27    Q    Now, at some point you determined that -- him to be

28    on parole; is that correct?

```
 1   A      He told me he was on parole.

 2   Q      Okay.  He's on parole.  He tells you he's on

 3   parole?

 4   A      Yes, he did.

 5   Q      Are you aware of the conditions -- his parole

 6   conditions?

 7   A      Yes.

 8   Q      You were aware of his parole conditions when you

 9   made this search of Mr. Turner?

10   A      Of his exact -- his personal or of parole

11   conditions?

12   Q      His exact personal?

13   A      No.

14   Q      Personal parole conditions?

15   A      I told you before I did not know him prior to my

16   contact.  Therefore I could not know his parole

17   conditions.

18   Q      You didn't think that was important to know those

19   conditions?

20   A      If he's on parole he's searchable.

21   Q      I see.  Okay.  That's your understanding of the

22   law?

23   A      Uh-huh.

24   THE COURT:  Yes.

25   THE WITNESS:  Yes.

26   MR. KLOPFENSTEIN:  Okay.

27   Q      So then based on the fact that someone says

28   hypothetically they're on parole or probation not knowing
```

1   those conditions you feel you can search anybody at any

2   time?

3   A      No.

4   Q      Well, you just testified a minute ago that because

5   Mr. Turner was on parole you felt you could search him?

6   A      I did.

7   Q      And you didn't even know what the conditions of his

8   parole were?

9   A      You just asked me if I could search someone on

10  parole or probation.  Probation has terms that state if

11  they are searchable or not.  Parole they are searchable.

12  Q      They're absolutely searchable, that's your

13  understanding of the law?

14  A      They are.

15  Q      Okay.  So to you there is a difference if someone

16  says they're on probation as opposed to being on parole,

17  there is difference in your mind in terms of someone being

18  searchable or not searchable?

19  A      There is.

20  Q      And you don't feel that you need to know -- just so

21  I'm clear, you don't feel you need to know the terms, the

22  conditions -- parole conditions in order to search a

23  parolee; is that right?

24  A      If they're on parole they're searchable.

25  Q      Okay.  So I take it you searched him.  Now, at some

26  point did you pull a Taser out?

27  A      I did.

28  Q      And did you Taser Mr. Turner?

1    A       I did not.

2            MR. EICHELE:    Object, not relevant, Your Honor.

3            THE COURT:  How is it relevant, Mr. Klopfenstein?

4            MR. KLOPFENSTEIN:    Well, I just -- it's relevant

5    to the police conduct that was going on at this time.

6            THE COURT:  Sustained.

7            MR. KLOPFENSTEIN:    Okay.

8    Q       In order to search him you said he was agitated; is

9    that right?

10   A       He was.

11   Q       And in order to conduct this search did you have to

12   pull out your Taser?

13   A       I don't use a Taser to conduct a search.

14   Q       Okay.   In order to subdue him to get him to a point

15   where you could handcuff him or control him, did you have

16   to use your Taser?

17   A       I felt it was necessary for my safety that he

18   comply.

19   Q       And that's when you pulled out your Taser?

20   A       It was.

21   Q       Did you Taser him?

22   A       I did not.

23   Q       Okay.

24           THE COURT:  I thought we'd done that, I thought the

25   Court already sustained an objection to that, Mr.

26   Klopfenstein on that question.

27           So you see when I do that it means you can't ask

28   that question.

Pursuant to this Court's order, the California Attorney General proposes the following order:

[separate page "proposed order"]

As Deputy District Attorney Robert Trudgen (Trudgen) formerly represented Defendant Anthony Turner (Turner) in another action that may pertain to the instant proceedings, this Court makes the following orders with a goal toward constructing an ethical wall around Trudgen regarding his former representation of Turner:

1.    That Trudgen continue to have no contact, regarding Turner, with any member of the Yolo County District Attorney's Office, or any other member of any office involved in the prosecution of Turner.

2.    That Trudgen continue to have no contact, regarding Turner, with any member of any investigative officer team or staff involved in the prosecution of Turner.


The Hon. Steven Basha,
Judge of the Yolo Co. Superior Court



Marco Antonio Topete, flanked by two Yolo County sheriff's deputies, talks with his attorney, Deputy Public Defender Dean Johansson (wearing glasses), during a court hearing this morning. Topete is accused of killing Deputy Tony Diaz.

SUE COCKRELL/ENTERPRISE

## THE DAVIS FRIDAY, JUNE 27, 2008

# enterp

# Judges challenged



**DIAZ**
Slain deputy

## Attorney alleges collusion at court

**By Lauren Keene
and Sharon Stello**
ENTERPRISE STAFF WRITERS

WOODLAND — Lawyers for the accused killer of Yolo County Sheriff's Deputy Jose "Tony" Diaz this morning filed a motion to recuse the entire Yolo County bench from hearing their client's case.

Deputy Public Defender Dean Johansson alleged that court operations were shut down for about a half-hour during Marco Antonio Topete's June 18 arraignment hearing so that sheriff's deputies, who provide security at the courthouse, could attend the proceeding.

"It shows judicial collusion on the part of the rest of the Yolo judiciary," Johansson said today during what was supposed to be a continued arraignment hearing for Topete.

Instead, the proceedings were brought to a halt until Judge David Rosenberg, who is presiding over the case, could issue a ruling on the motion. He set a decision date of July 3.

Topete's arraignment hearing came under fire last week after

See JUDGES, Page A9

THE DAVIS ENTERPRISE

# FROM PAGE ONE

# JUDGES: Civilian clothes OK'd for court

sheriff's deputies failed to unlock the court building's front door during the proceeding, preventing members of the public — including Topete's relatives and the media — from attending.

Instead, the courtroom was filled with law-enforcement officers and Diaz's family, who were allowed to enter the building through separate doors. Earlier this week, the court issued a report that faulted the Sheriff's Department for the incident.

Topete, 35, is accused of shooting Diaz in the chest area following a June 15 vehicle pursuit in Dunnigan. The charges against him include murder with four special-circumstance allegations that make him eligible for the death penalty.

He appeared in court today in a dress shirt, tie and slacks, awaiting a decision Thursday by Rosenberg to allow Topete to wear civilian



SUE COCKRELL/ENTERPRISE PHOTO

Yolo County Superior Court Judge Dave Rosenberg asks a question of Deputy Public Defender Dean Johansson at this morning's hearing in Woodland.

clothing and appear unshackled during his pretrial court hearings where cameras are present.

Topete's attorneys had filed a pair of motions seeking the special conditions so that potential jurors in the case would not be prejudiced by his appearance.

Topete wore a jail-issued orange jumpsuit and bullet-proof vest at Thursday's hearing, as well as at his arraignment last week.

Yolo County District Attorney Jeff Reisig and Assistant County Counsel Daniel Cederborg urged Rosenberg to allow continued use of restraints on Topete, citing his criminal history and the violent nature of the charges against him, for the safety of

sheriff's deputies who escort him to and from court.

Rosenberg responded that Department 9, where most of Topete's pretrial hearings will be held, provides ample security.

Diaz was remembered at a memorial service this morning at The Pavilion at UC Davis, which drew thousands of law enforcement officers and members of the public and included a huge motorcade from Woodland to Davis.

The public also is invited to attend a viewing for Diaz at 6 p.m. Monday at St. Peter's Church, 105 S. Second St. in Dixon. A Rosary will follow at 7 p.m. A Mass will begin at 10 a.m. Tuesday at the church, followed by burial at Silveyville Cemetery, 800 S. First St. in Dixon.

— Reach Lauren Keene at lkeene@davisenterprise.net or (530) 747-8048. Reach Sharon Stello at sstello@davisenterprise.net or (530) 747-8043. Comment on this story at www.davisenterprise.com



Anthony R. Turner, #G-29511
Deuel Vocation Institution
P.O. Box 600
Tracy, California 95378-0600

"Confidential"
Legal Mail

United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102





RECEIVED

AUG 8 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA